UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY MARSHALL,

    Plaintiff                               Civil Action No. 13-10658

v.                                         HON. PAUL D. BORMAN
                                           U.S. District Judge
                                           HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Wendy Marshall ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On May 10, 2010, Plaintiff filed applications for SSI and DIB, alleging an onset of disability date of January 1, 2008 (Tr. 175-178, 179-185). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on September 15, 2011 in Flint, Michigan before Administrative Law Judge ("ALJ") Kevin W. Fallis (Tr. 39). Plaintiff,

represented by attorney Robert MacDonald, testified, as did Vocational Expert ("VE") Mary Williams (Tr. 44-81, 81-91). On October 27, 2011, ALJ Fallis found Plaintiff not disabled (Tr. 34). On January 16, 2013, the Appeals Council denied review (Tr. 1-7). Plaintiff filed for judicial review of the final decision in this Court on February 15, 2013.

## BACKGROUND FACTS

Plaintiff, born October 31, 1974, was just short of her 37th birthday when the ALJ issued his decision (Tr. 34, 175). She completed 10th grade (Tr. 204) and worked previously as a cashier and "chore provider" (Tr. 205). She alleges disability as a result of asthma, Chronic Obstructive Pulmonary Disease ("COPD"), depression, and anxiety (Tr. 203).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She lived in a two-story apartment with her husband and 20-month-old son (Tr. 44-45). Her bedroom was on the second floor (Tr. 45). She climbed the stairs between the two floors approximately twice a day (Tr. 45). Climbing the stairs created shortness of breath (Tr. 45). She had never held a driver's license and was "scared to drive" (Tr. 45). Her fear of driving was exacerbated by a 2001 car accident (Tr. 46). She relied on her husband to take her to doctors appointments and shopping excursions (Tr. 46). She dropped out of school after 10th grade because she had to work (Tr. 47). She later completed all of the requirements for a GED except for math (Tr. 47-48). She had not completed her GED because of problems interacting with people (Tr. 48). She received job training before beginning a stint as a housekeeper at a local sports arena (Tr. 49). The housekeeping job required her to lift up to 40 pounds (Tr. 50). She worked briefly as a care giver to her mother (Tr. 49-50).

Plaintiff had been receiving treatment from Dr. Filos, a pulmonary specialist, since August, 2010 (Tr. 50-51). She saw Dr. Filos approximately once every six months (Tr. 50).

She received monthly treatment from Dr. Carlos, her primary care doctor (Tr. 50). Since the beginning of 2011, she had also received monthly treatment from Dr. Sabbagh, a neurologist (Tr. 51). She denied other recent treatment except for a one-time examination by a cardiologist in May, 2010 (Tr. 52). She experienced the side effects of "shakiness, tiredness, and headaches" from both a nebulizer and Xanax (Tr. 53).

Plaintiff's disability was caused primarily by breathing problems (Tr. 54). She first experienced breathing problems at the age of 15 (Tr. 54). The condition became worse until she became unable to work in January, 2008 (Tr. 54). She experienced shortness of breath every day (Tr. 54). She used inhalers since the age of 15, but they no longer provided relief (Tr. 55). She used a nebulizer up to four times a day for half an hour at a time, used the inhaler six times a day, and took Advair to control breathing problems (Tr. 56).

Plaintiff had experienced anxiety attacks for the last four years (Tr. 57). She attributed her anxiety attacks to the death of her child when she was 21, her brother's suicide, her mother's recent death, being robbed at work, and a car accident (Tr. 57). The anxiety attacks were triggered by the workplace robbery (Tr. 58). She experienced anxiety attacks lasting one to two hours on a daily basis (Tr. 58). She had called an ambulance on numerous occasions in response to anxiety attacks (Tr. 58). Her current anxiety attacks were brought on by "loud noises" and her perception that others were staring at her (Tr. 60).

Neck, back, and leg pain also created workplace limitations (Tr. 60). She first experienced the pains after the 2001 car accident (Tr. 60). She experienced level "eight" pain on a scale of one to ten without medication and a "six" after taking medication (Tr. 60-61). She experienced level "ten" leg pain before taking medication and a "seven" after (Tr. 62). Her hand condition, including, pain, tingling, and numbness created level "six" pain on a consistent basis (Tr. 62).

Plaintiff was unable to lift more than 10 pounds, sit or stand for more than 30 minutes, or walk for 10 (Tr. 63-65). She spent most of the day lying down (Tr. 64). Her household activities were limited to vacuuming, doing dishes, and simple meal preparation (Tr. 65). She did not use computers (Tr. 67). She generally took two to three naps each day lasting for up to four hours (Tr. 68). She spent most of her waking hours sitting with occasional interaction with her son (Tr. 69). She experienced problems following the cases presented on "Judge Judy" (Tr. 70-71). She did not have hobbies and did not socialize, go to church, or belong to clubs (Tr. 72). She quit smoking a few weeks before the hearing and had not used alcohol in two years (Tr. 73-74). Her criminal history was limited to a misdemeanor for possession of marijuana (Tr. 74).

In response to questioning by her attorney, Plaintiff stated that she stopped working as a cashier in 2007 then began acting as a care giver to her mother (Tr. 75). She reiterated that her physical problems and respiratory problems obliged her to stop working for her mother (Tr. 76). Plaintiff had been hospitalized for an asthma attack three months before the hearing (Tr. 77). Her lung condition was exacerbated by physical exertion (Tr. 78). She had been using a nebulizer since the June hospitalization (Tr. 78). Physical therapy had been recommended for neck and leg problems but she had not attended the prescribed sessions (Tr. 79-80). She experienced leg pains shooting to her ankle (Tr. 80). She reiterated that she was unable to work due to breathing problems and pain (Tr. 81).

**B.     Medical Evidence[1]**

### 1. Treating Records

In October, 2007, Plaintiff underwent a procedure to remove polyps of the vocal cords and nasal cavity (Tr. 408, 411). The procedure was performed without complications (Tr. 412). In November, 2007, Plaintiff sought emergency treatment for vertigo (Tr. 349). She was diagnosed with a middle ear infection and prescribed an antihistamine (Tr. 353-354). In February, 2008, she sought emergency treatment for a minor head injury (Tr. 339). A CT of the head was negative for abnormalities (Tr. 346). The following month, neurologist M.N. Sabbagh, M.D. noted Plaintiff's reports of dizziness and neck and back pain (Tr. 365). Dr. Sabbagh noted "some limping secondary to left ankle injury," but full muscle strength in all extremities (Tr. 366).

In April, 2010, pulmonary specialist Orlando A. Filos, M.D. diagnosed Plaintiff with mild COPD, noting "significant airway inflammation and secondary bronchospasm" (Tr. 433). He prescribed Advair and one puff of Spiriva each day (Tr. 433). Dr. Filos found that "it [was] absolutely imperative" that Plaintiff stop smoking (Tr. 433). Imaging studies of the chest showed hyperinflation but no nodules, masses, or effusions (Tr. 435). Plaintiff demonstrated significant improvement after the one-time use of an inhalant (Tr. 436). In May, 2010, an EKG exercise stress test and echocardiogram both yielded normal results (Tr. 423, 547-548). Cardiologist George S. Predeanu, M.D. observed that Plaintiff experienced shortness of breath but continued to smoke a half pack of cigarettes daily (Tr. 426). He noted that Plaintiff was fully oriented with a "good" mental status and normal respiratory function (Tr. 427). A June, 2010 x-ray of the cervical spine was unremarkable (Tr. 503).

---

[1]Conditions unrelated to the claim for benefits have been reviewed but are omitted from the present discussion.

A July, 2010 EMG showed mild mononeuropathy of both wrists (Tr. 442, 592). Dr. Sabbagh noted that Plaintiff complained of neck pain, but exhibited a full range of neck motion and full strength in all extremities (Tr. 443). An MRI of the cervical spine was unremarkable (Tr. 589-590).

August, 2010 treating records state that Plaintiff exhibited anxiety about leaving her son with a babysitter after a social worker required her to attend work training (Tr. 482). Dr. Filos completed a work release, stating that Plaintiff was unable to work due to drowsiness and "very severe asthma" (Tr. 551). Dr. Sabbagh noted that Plaintiff did not appear in acute distress and exhibited full strength in all extremities (Tr. 588). He prescribed Darvocet for "as needed" use and recommended neck and shoulder exercises (Tr. 588). In September, 2010, Plaintiff sought treatment from Dr. Leonard Dias for "hoarseness" (Tr. 456). A medication list included Xanax, Advair, Spririva, and Flexeril (Tr. 459). Dr. Sabbagh indicated that he would decline future requests for Darvocet prescriptions (Tr. 478). Plaintiff reported reduced depression but continued anxiety (Tr. 480). She requested a work release to November, 2010 only, noting that "that is all her work [would] accept at this time" (Tr. 569). An October, 2010 chest x-ray showed a nodule on the right lower lobe (Tr. 465, 471, 572). Plaintiff admitted to smoking a half pack of cigarettes each day (Tr. 472). She reported later the same month that she had tapered her usage to two cigarettes a day (Tr. 477). Dr. Dias "strongly urged [her] to quit smoking entirely" (Tr. 477).

In November, 2010, Dr. Filos completed a medical source statement, finding that Plaintiff was unable to sit for more than four hours a day, stand for more than one, or walk for more than 30 minutes (Tr. 450). He found that Plaintiff would need to sit or lie down at "her discretion" (Tr. 450). He precluded all bending, squatting, kneeling, and stooping, and found that Plaintiff's ability to grasp, reach, push or pull, and perform fine manipulations was

-6-

"extremely limited" (Tr. 450). He found that Plaintiff was unable to lift even five pounds (Tr. 451). He found that Plaintiff's symptoms would markedly interfere with her ability to concentrate, work without interruption, and adhere to a regular schedule (Tr. 451). The same month, Dianne K. Trudell, M.D. noted "few tender points to palpation" (Tr. 553). She prescribed wrist splints for CTS (Tr. 553). Plaintiff declined recommendations for physical therapy due to her inability to find a babysitter (Tr. 553). An x-ray of the cervical spine showed mild disc narrowing at C4-C5 but no other abnormalities (Tr. 555). X-rays of the pelvis and hands showed some joint narrowing (Tr. 557). The following month, Plaintiff requested a work release and pain medication (Tr. 566).

In January, 2011, Plaintiff requested a work release indicating "why she can't work" (Tr. 585). In May, 2011, Dr. Sabbagh noted Plaintiff's reports of radiculopathy but observed normal strength in all extremities (Tr. 585). An EMG of the lower extremities was unremarkable (Tr. 586). A June, 2011 MRI of the thoracic and lumbar spine showed early degenerative changes but no other abnormalities (Tr. 584). The same month, a pulmonary function test by Dr. Filos showed moderately severe COPD and severe air flow limitation but improvement after inhalant use (Tr. 593). He found "no evidence of restrictive lung disease" (Tr. 593). He noted the presence of "very severe asthmatic bronchitis" (Tr. 616). Also in June, 2011, Plaintiff sought emergency treatment after running out of inhalers (Tr. 617). The following month, she reported smoking three to four cigarettes each day (Tr. 603).

### 2. Non-Treating Records

In August, 2010, psychologist Matthew P. Dickson, Ph.D. performed a consultative examination, noting Plaintiff's reports of dizziness, anxiety, depression, and dislike of crowds (Tr. 445). Plaintiff acknowledged a history of alcohol abuse (Tr. 445). She stated that she had worked "about 20 hours per week" for the last two years (Tr. 445). She

reported that she previously quit a long-term position as a cashier due to altercations with her boss and customers (Tr. 445). She reported communicating with her mother and sister by telephone (Tr. 446). Plaintiff acknowledged that she could take care of son, do household chores, cook, clean, do laundry, shop, pay bills, and count money (Tr. 446). She was unable to use cleaning supplies, but was otherwise able to perform household tasks (Tr. 446). Dr. Dickson concluded that Plaintiff's psychological condition "would moderately impair her ability to perform work related activities" (Tr. 447). He assigned her a GAF of $52^2$ (Tr. 448).

### 3. Material Submitted After the October 27, 2011 Administrative Decision[3]

In September, 2011, Plaintiff sought a referral for pain management (Tr. 639). Rama D. Rao, M.D. recommended epidural injections, noting that Plaintiff "should get pain medication from [only] one prescriber" (Tr. 644). A physical examination was unremarkable (Tr. 644). The same month, Dr. Filos noted that Plaintiff had resumed smoking a half pack of cigarettes a day (Tr. 648). Dr. Filos noted that Plaintiff did well with "the proper use of her inhalers" (Tr. 649). In October, 2011, Plaintiff sought emergency treatment for nausea and chest pain after going out and "having some drinks" (Tr. 653). December, 2011 treating records indicate that Plaintiff quit smoking altogether (Tr. 633). She requested a referral to

---

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*")(4th ed.2000).

[3]This material was not considered by the ALJ, but submitted for Appeals Council consideration (Tr. 6). However, Plaintiff does not base his arguments for remand on the newer evidence. Moreover, he does not argue that the records are material to the ALJ's decision or that "good cause" exists for their late submission as required by the sixth sentence of 42 U.S.C. § 405(g). My own review of these records shows that they are unlikely to change the ALJ's determination.

a hand surgeon after experiencing a "knot" in her left hand for three days (Tr. 635-636). X-rays of both hands were unremarkable (Tr. 641). Dong Wha Ohm, M.D. recommended a Depomedrol injection to the left wrist, noting the presence of CTS (Tr. 642).
(Tr. 642).

In January, 2012, Plaintiff sought emergency treatment for a urinary tract infection (Tr. 650). She admitted that she currently smoked (Tr. 651). The same month, Plaintiff underwent a left carpal tunnel release and the removal of a synovial cyst (Tr. 288-289). In July, 2012, Dr. Filos noted that Plaintiff had resumed smoking but had not required recent emergency room visits (Tr. 661).

### C. Vocational Expert Testimony

VE Mary Williams classified Plaintiff's previous work as a cashier as exertionally light and unskilled and work as a housekeeper, medium/unskilled[4] (Tr. 83). The ALJ then described a hypothetical individual of Plaintiff's age, educational level, and work experience:

> [T]his individual would be able to perform work at the light level which is lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently. Stand/walk for about six hours and sit for up to six hours in an eight hour workday with normal breaks. This individual would have to avoid concentrated exposure to extreme cold and extreme heat. They would have to avoid even moderate exposure to wetness or humidity. And they would have to avoid even moderate exposure to environmental irritants such as fumes, odors, dust, and gases. Work would be limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements. Involving only simple work related decisions and routine workplace changes. There can only be occasional and superficial interaction

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

with the public and with co-workers. (Tr. 83).

The VE testified that the individual could not perform any of Plaintiff's past relevant work, but could perform the light, unskilled work of a food prep worker (5,800 positions in the State of Michigan); packer (9,200); and stock clerk (6,900) (Tr. 84). The VE testified further that if the individual were further limited by the need to "avoid even moderate exposure to extreme cold and extreme heat," and "avoid all exposure to wetness . . . humidity . . . fumes, odors, dust, and gases," the above-cited jobs would be precluded, but that the individual could perform the light, unskilled work of a general office clerk (3,000) and the unskilled, sedentary work of a surveillance system monitor (400); credit clerk (325); and order clerk (400) (Tr. 87). The VE testified that the need to be off task for 20 percent of the work day, or, the need to miss two days of work each month due to "doctor visits, symptoms, and side affects (sic) of medications" would preclude all work (Tr. 88).

In response to questioning by Plaintiff's counsel, the VE testified that the inability to lift more than five pounds would preclude all of the above jobs (Tr. 89). She testified further that if the individual were limited to "occasional" fine manipulation, the packer, stock clerk, credit clerk, and order clerk jobs would be eliminated and the food prep and general office clerk positions would be reduced by 50 percent, (Tr. 89-90). She testified that the surveillance system monitor position would be unaffected (Tr. 90). She concluded by testifying that if the individual were required to lie down for two hours of each work day, all work would be precluded (Tr. 91).

### D. The ALJ's Decision

Citing the medical records, ALJ Fallis determined that Plaintiff experienced the severe impairments of "[COPD], asthma, depression, [CTS], and back pain" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 25-26). He found Plaintiff experienced mild restriction in activities of daily living, and moderate difficulties in social functioning and concentration, persistence, or pace (Tr. 26). He found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following restrictions:

> [W]ould require a job that would incorporate avoiding concentrated exposure to extreme cold and heat; even moderate exposure to wetness or humidity; even moderate exposure to environmental irritants such as fumes, odors, dusts and gases. Work is limited to simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work-related decisions and routine work place changes; only occasional, superficial interaction with the public and coworkers (Tr. 27).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform her former jobs, she could work as a food prep worker, packer, and stock clerk (Tr. 33).

The ALJ discounted the allegations of limitation, noting that Plaintiff did not experience respiratory difficulties during the cesarean delivery of her son (Tr. 29). He noted that despite urgent treating recommendations to stop smoking, she continued to smoke five to seven cigarettes each day (Tr. 29). The ALJ rejected Dr. Filos' November, 2010 disability assessment, noting that his finding that Plaintiff was unable to lift more than five pounds or perform any postural functions contradicted the treating records, clinical findings, and other evidence of record (Tr. 31).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

Plaintiff makes two arguments in favor of remand. First, she contends that the ALJ erred by omitting her need to lie down at unpredictable intervals from the hypothetical question posed to the VE. *Plaintiff's Brief* at 15-17, *Docket #7*. Second, she argues that the ALJ commit reversible error by failing to explain his reasons for rejecting Dr. Filos' November, 2011 opinion of disability level limitations. *Id.* at 18-20.

The question of whether the ALJ erred by rejecting Dr. Filos' opinion is largely determinative of the "hypothetical question" argument and will thus be considered first.

### **A. The Treating Physician Analysis**

Plaintiff argues that the ALJ erred by discounting Dr. Filos' November, 2010 medical source statement. *Id.* at 18-20. She contends, in effect, that the treating physician's opinion that she was unable to lift even five pounds and needed to lie down "at her discretion," is uncontradicted by any other evidence. *Id.*

Plaintiff is correct that an opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)(citing *Wilson,* at 544-446). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

Dr. Filos' findings, if adopted, would mandate a disability finding. His opinion that Plaintiff was unable to lift even five pounds would preclude even sedentary work (Tr. 89, 451). Likewise, his finding that Plaintiff needed to lie down at her discretion and experienced several marked psychologically based limitations would eliminate all unskilled work (Tr. 91, 450).

The ALJ cited Dr. Filos' statement at length, but rejected the treating opinion, stating that the determination of disability "is an issue reserved to the Commissioner" (Tr. 31 citing SSR 96-5p). The ALJ noted further that "the degree of functional limitation of lifting less than [five] pounds, and other limitations is not consistent with the treatment notes, the clinical findings, or other evidence of record" (Tr. 31).

First, substantial evidence supports the ALJ's rejection of Dr. Filos' findings. Plaintiff's own August, 2010 statements to Dr. Dickson, with nothing more, defeat Dr. Filos' assessment. Plaintiff admitted to part time work (Tr. 445). She indicated that she quit her former job as a cashier because of altercations with her boss and customers rather than as a

result of a physical limitation (Tr. 445). She stated that her ability to perform household chores was limited only by her inability to use cleaning products (Tr. 446). During the August, 2010 consultative examination, she did not allege any physical limitations precluding exertionally light work. As for the treating records, Dr. Sabbagh noted repeatedly that Plaintiff exhibited full strength in all extremities (Tr. 366, 443, 585). Dr. Filos' own treating notes state that Plaintiff's respiratory condition improved noticeably after one inhalant (Tr. 436, 593).

Plaintiff makes an overlapping argument that the finding that Dr. Filos' opinion was "not consistent with the treatment notes, the clinical findings, or other evidence of record" (Tr. 31) does not constitute "good reasons" for the rejection. However, the ALJ's statement directly follows a three page discussion of the medical and consultative records, including Plaintiff's statements to Dr. Dickson (Tr. 30), Dr. Sabbagh's finding of full extremity strength and a full range of motion (Tr. 30), and Dr. Filos' observations that Plaintiff's condition was immediately improved with the single use of an inhaler (Tr. 29). Because the ALJ's rejection well supported and articulated, remand on this basis is not warranted.

### B. The Vocational Testimony

In a related argument, Plaintiff faults the ALJ for failing to include the need to recline at unpredictable intervals among the hypothetical limitations posed to the VE. *Plaintiff's Brief* at 15-17. He argues that the ALJ failed to explain his rationale for rejecting the allegations that she needed to lie down at unpredictable intervals. *Id*

Vocational testimony given in response to the hypothetical question constitutes substantial evidence only if the question accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). While the Sixth Circuit has rejected the proposition that all of the

claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.* 368 F.3d 629, 632 (6th Cir.2004).

As discussed in the previous section, the exclusion of the purported need to recline from the hypothetical limitations is supported by the record. The only medical evidence supporting the need to recline at unpredictable times is Dr. Filos' assessment. None of the other treating or consultative records, including Dr. Filos' treating notes, support the conclusion that she needed to recline at her discretion. The ALJ did not err in rejecting an opinion of limitation otherwise unsupported by the record. Having explained his reasons for rejecting a portion of Plaintiff's allegations, the ALJ was not obliged to include them in the hypothetical limitations posed to the VE. *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994).

As a whole, the record supports the ALJ's conclusion that while Plaintiff experienced some level of limitation as a result of her condition, "the symptoms are not so severe as to prohibit her from performing basic work activities" (Tr. 32). The hypothetical question to the VE and the RFC both account for limitations as a result of respiratory conditions by limiting Plaintiff's exposure to fumes, odors, dusts, gases, and temperature extremes (Tr. 27, 83). To the extent that the ALJ found Plaintiff's claims of concentrational problems credible, he limited her to "simple, routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work-related decisions and work place changes" (Tr. 27).

Likewise, the ALJ did not err in excluding some of the more extreme claims from the hypothetical question or RFC. Despite allegations of chronic back pain and the purported need for narcotic pain killers, the ALJ correctly noted that the imaging studies showed at

most mild conditions (Tr. 32).  The ALJ observed that Plaintiff had not received treatment for depression or anxiety and had no history of psychiatric hospitalizations (Tr. 32).  He permissibly discredited Plaintiff's allegations of exertional limitations on the basis that she continued to smoke after being advised repeatedly that her habit exacerbated the respiratory conditions.  *See Sias v. Secretary of Health and Human Services*  861 F.2d 475, 480 (6th Cir. 1988)(smoking may be used to discount a claimant's allegations of disability); *Brown v. Social Security Administration*  2000 WL 876567, *1 (6th Cir. August 22, 2000)(claimant's continued smoking despite a diagnosis of chronic obstructive pulmonary disease "indicates that the condition is not disabling").

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize the limitations created by Plaintiff's respiratory condition. However, because the decision that Plaintiff was not disabled falls within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and  that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 25, 2014         s/ R. Steven Whalen
                                 R. STEVEN WHALEN
                                 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on February 25, 2014, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager to the
                                 Honorable R. Steven Whalen